JOHN JEFFRIES v. WM. H. CLARK.

1. TAX DEED, *Holder of Defeated; Execution Denied, Not Error.* Where the holder of a tax deed is defeated in an action against him for the recovery of the land sold, and the successful claimant is adjudged to pay to the holder of the tax deed all taxes, interest and costs before the claimant shall be let into full possession, the court does not commit error in refusing to award an execution in behalf of the holder of the tax deed against the property of the successful claimant to collect the taxes from the goods and chattels, lands and tenements of such claimant.

2. TAXES, *When Not Discharged; Estoppel.* Where certain premises, subject to taxation, were assessed for the year 1873 by C., the owner, (who

Statement of the Case.

was at that time the authorized person to assess the land,) by the following name and description:

| Name of owner. | Description. | Sec. | T. | R. | A. | Valuation. |
|---|---|---|---|---|---|---|
| W. H. Clark......... | 2 acres in E.¼ N. W.¼ N. E.¼............ | 2 | 17 | 19 | 2 | $500 |

*Held,* That C., the owner and assessor, is thereafter estopped from obtaining a discharge of the land from the payment of the taxes under the assessment, on the ground that the description is so uncertain that all the tax proceedings are void.

## *Error from Franklin District Court.*

ON January 3, 1878, *John Jeffries* took possession of a small house and lot in Ottawa, under and by virtue of a tax deed. On January 31, 1878, he brought an action against *W. H. Clark,* who claimed to be the owner of the premises, to quiet the title. On February 25, 1878, *Clark* brought an action, in the nature of an ejectment, against *Jeffries,* for the same property. The two causes were consolidated, and tried by the court without a jury, on September 20, 1878. The court found the following facts:

1. That in the year 1873, Wm. H. Clark was the owner in fee, and in the possession of the following real estate, situate in Ottawa city, Franklin county, Kansas, to wit: Commencing at a point 30 feet west and 711 feet south of the northwest corner of the northeast quarter of the northeast quarter of section (2) two, township (17) seventeen, range (19) nineteen, thence running west 260 feet, thence south 270 feet, thence east 260 feet, thence north 270 feet, to the place of beginning, being the same lands described in said tax deed.

2. That said real estate was assessed for the year 1873, by the following name and description, to wit:

| Name of owner. | Description. | Sec. | T. | R. | A. | Valuation. |
|---|---|---|---|---|---|---|
| W. H. Clark............... | 2 acres in E.¼ N. W.¼ N. E.¼............ | 2 | 17 | 19 | 2 | $500 |

And that such assessment was made by defendant Clark, who was at that time the duly-authorized person to assess said land.

3. That the land was in the same name and by same de-

29—23 KAS.

scription as last above mentioned placed on the tax dupli-
cate of Franklin county for the year 1873, and taxes were
levied upon the land for said year by the duly-authorized
officers, and that the state tax for general revenue levied upon
the land for said year, and placed upon the tax duplicate,
was six (6) mills on each dollar ($1) valuation, making a
total state tax for general revenue of three dollars ($3), when
the law then in force, under which the tax was levied, only
allowed and permitted a levy of state tax for the year of five
mills (5) on each dollar ($1) valuation, or a total state tax for
general revenue upon the land of two and $\frac{50}{100}$ dollars.

4. That the state, school, county, city and school taxes were
duly and legally levied upon the land, upon the valuation of
$500, in addition to the state tax for general revenue.

5. That the tax was not paid, and that on May 7, 1874,
the land was sold for taxes, including the excess of $\frac{50}{100}$ dol-
lars so levied for state tax, and was purchased by G. W.
Hamblin for the sum of $28$\frac{47}{100}$, and a certificate of sale issued
to him by the county treasurer, as provided by law.

6. That the subsequent taxes for the year 1874, amounting
to $26.25, were, on December 22, 1874, paid by said Hamblin,
and indorsed on the certificate of sale; and the subsequent
taxes of 1875, amounting to $15.80, were, on January 6,
1876, paid by the purchaser, and indorsed; the subsequent
taxes of 1876, amounting to $12.70, were, on December 22,
1876, paid by the purchaser, and indorsed.

7. That no sufficient notice, as required by § 110, ch. 107,
Gen. Stat., (the law then in force,) has ever been published
by the county treasurer of Franklin county, Kansas, notifying
the owners of the land above described that, unless redeemed
by a certain time, the same would be deeded to the tax pur-
chaser, in this, that the notice published did not contain any
amount required to redeem said land because of such tax sale,
but was otherwise regular.

8. That on March 3, 1877, John Jeffries purchased the tax
certificate above mentioned, and on January 30, 1878, the
county clerk of Franklin county issued to John Jeffries a
tax deed for the land described in the tax certificate, to wit:
Two acres, east one-fourth, northwest quarter northeast quar-
ter section two (2), township 17, range 19, containing two
acres, for the sum of $193.94, (that being the entire amount
of taxes, interest and penalties as shown by the tax certifi-
cate, including the excess of state tax of $\frac{50}{100}$ dollars and in-
terest thereon,) and that under and by virtue of the tax deed,

on January 30, 1878, Jeffries took possession of the land and has ever since, by his tenant, remained in possession of the same and entitled to, but never having collected from said tenant, the rents and profits thereof, which the court finds to be of the value of $38.35.

9. That the tax-deed is *null* and *void* for want of publication of sufficient notice as required in § 110, ch. 107, Gen. Stat.

10. That Clark is the legal owner of the land, and entitled to the possession of the same, upon his paying to Jeffries the sum of $224, that being the amount due upon the tax deed, with interest and costs, as provided by § 117, ch. 107, Gen. Stat., less the sum of fifty cents and interest thereon, the excess of the state tax levied upon said lands for the year 1873, which amount of fifty cents and interest the court finds to be illegal and void, and deducting from said $224 the amount of said rents and profits, $38.35, leaving a balance of $185.65.

Judgment was thereon entered, vacating the tax deed, and providing that *Clark* should have possession of the property, upon the payment to Jeffries of $185.65, with interest at seven per cent. per annum. *Clark* failed to pay that sum. *Jeffries* applied to the court, at the January Term, 1879, for an execution in his behalf, against *Clark*, to collect the money. The district court denied the motion, on the ground that the law did not authorize judgment in such a case to be collected by an ordinary execution against the property of *Clark*. *Jeffries* duly excepted, and brings the case here. *Clark* filed a crosspetition in error, alleging that the judgment of the district court should be set aside, and that he be awarded the possession of his property, free from all claims of *Jeffries*.

*Jno. W. Deford*, for plaintiff in error:

1. As the plaintiff in error had put his tax deed on record, Clark might have brought ejectment under § 118, ch. 107 of Gen. Stat. 1868, or sued to quiet title under § 594 of the code. If successful, he would of course under § 117 have been duly "adjudged to pay to" Jeffries, the full amount of the taxes, etc., and perhaps it might idly have been added, that he should not be "let into possession" before making such payment. But if, as supposed, he were already in

actual possession, or the land wild and vacant, such a judgment, it is evident, would be a mere *brutum fulmen.* And if, in addition to this, the law, as holden by the lower court, "does not authorize a personal judgment against Clark, to be enforced by execution," Jeffries would be entirely remediless; he would never get the money, and Clark would keep the land.

It should be remarked in this connection, too, that § 117 contains no provision, that if the "successful claimant" shall be in possession, or the land vacant, he shall be ousted and the holder of the tax deed put into his place and stead, and kept there until the taxes, etc., due him shall be paid. If he be in possession (as he scarcely ever is), he may stay there until he shall receive his money; but if the adversary is in (as he usually is), he may remain and not pay at all, if the law be as decided by the district court.

2. But did not the district court misapprehend, not only the force and effect, but the form and letter of § 117? It declares that "if the holder of a tax deed . . . be defeated in an action by or against him for the recovery of the land sold, the successful claimant *shall be adjudged to pay* to the holder of the tax deed . . . before such claimant shall be let into possession, the full amount of all taxes," etc.; or, in other words, that a *judgment shall be rendered* against the successful claimant for such moneys, and that the tax-deed holder, if he has possession, shall retain it as a pledge until such judgment shall be satisfied by execution or otherwise. This section incontestibly creates a *debt* against the successful claimant. Sec. 443 of the code enacts, that "lands, tenements, goods and chattels not exempt by law shall be subject to the payment of debts, and shall be liable to be taken on execution and sold," etc. "Execution is the obtaining actual possession of a thing recovered by judgment of law, and is called the life of the law, and therefore *in all cases to be favored.*" (Bac. Abr., *Execution,* A.) "*Executio est fructus, finis et effectus legis.*" (Co. Litt. 289.)

In fact, the power to render a judgment implies the power

to carry it into execution. A court competent to pronounce judgment is competent to issue execution. *United States v. Drennen*, Hempst. 320; *McNair v. Lane*, 2 Mo. 57; *Wayman v. Southard*, 10 Wheat. 1.

*Clark & Wilkinson*, for defendant in error:

1. The description of the land assessed is so uncertain and erroneous that the land ought not to have been sold, and the sale is void. (*Comm'rs of Lyon Co. v. Goddard*, 22 Kas. 389.)

2. The sale was void. The land mentioned in the sale certificate is not the land assessed. Part of the levy was illegal and void, and not a mere irregularity; and if the levy was illegal and void, the taxes never became due; and the taxes not being due, the treasurer had no right to sell, and if he did sell, his acts were void. This court cannot say that this excessive levy was a mere irregularity, for the court below finds it as a fact that it was *illegal* and *void;* and if so, there was nothing due. The treasurer not having given the redemption notice, as required by § 110, ch. 107, Gen. Stat., the clerk had no legal right to issue a tax deed, and his acts were void and illegal.

If the land never was sold, § 117, ch. 107 of Gen. Stat. has no application to this case, and the judgment of the court below should be set aside. The word " sold," in § 117, means a legal sale, and unless it is a legal sale there never was a sale; and if there never was a sale the court below had no authority to enter judgment for the taxes, and 50 per cent. interest and penalties. In order to allow a party to collect such a rate of interest, he must certainly show that he does it by a legal process and in a legal manner.

Sec. 120, ch. 107, Gen. Stat., provides a remedy for the holder of a void and illegal tax certificate. Sec. 121, ch. 107, Gen. Stat., states in plain and emphatic language that "if, after a conveyance of land sold for taxes, it shall be *discovered*, or *adjudged* that the sale was invalid, the county commissioners *shall*," etc., thus giving the purchaser of the illegal and void certificate his money and his interest. Certainly, this

section 121 covers all cases where the sale was invalid, and a party has no option in the matter.

The judgment of the court below should be set aside, and on the facts stated a judgment should be rendered giving Clark the possession of his property free from all claims of Jeffries, and let him seek his remedy as provided by law in such cases. Plaintiff in error asks for an execution against defendant in error, for the amount found due by the court below. Since he states in his brief that the property is not worth the taxes, it seems that he wants to take the personal property of Clark to pay the taxes on said real estate.

The opinion of the court was delivered by

HORTON, C. J.: Counsel for plaintiff in error asserts that as Clark, the owner of the premises in controversy, has failed to pay to Jeffries, the holder of the tax deed, the taxes, interests and costs allowed by the court under the provision of § 5919, Comp. Laws 1879, p. 967—presumably because the premises are not worth the amount—that Jeffries is entitled to a general execution against the property of Clark. It follows as a consequence of this claim, that the goods and chattels of Clark can be first taken to pay the taxes, etc.; and that in the absence of goods and chattels, the lands and tenements of Clark may be seized. The section of the statute under which the taxes, etc., were allowed, is as follows:

"If the holder of a tax deed, or anyone claiming under him by virtue of such tax deed, be defeated in an action by or against him for the recovery of the land sold, the successful claimant shall be adjudged to pay to the holder of the tax deed, or the party claiming under him by virtue of such deed, before such claimant shall be let into possession, the full amount of all taxes paid on such lands, with all interests and costs as allowed by law up to the date of said tax deed, including the costs of such deed and the recording of the same, with interest on such amount at the rate of twenty per cent. per annum, and the further amount of taxes paid after the date of such deed, and interest thereon at the rate of twenty per cent. per annum."

The plaintiff in error obtained all the order he was en-

titled to at the hands of the court, and no error was committed in refusing an execution against the property of Clark, to collect the taxes from his goods and chattels, lands and tenements. (*Babbitt v. Johnson*, 15 Kas. 252.)

The principal objection to the order making the successful claimant pay the taxes, etc., before the holder of the tax deed can be ousted of possession as set forth in the cross-petition is, that the description of the land assessed is so indefinite and uncertain that no land should have been sold under the assessment, and that the sale is void. The case of the *Comm'rs of Lyon Co. v. Goddard*, 22 Kas. 389, is cited in support of this view. But Clark is in no position to avail himself of any such objection to the tax proceedings. The assessment was made by him at a time when he was the duly-authorized person to assess the land. He knew the land; he was its owner; he was acquainted with its situation and precise description. The identical premises mentioned in the judgment were subject to taxation. If the description in the assessment roll was too uncertain or indefinite for the public generally, it did not mislead him. If Jeffries could be ousted of possession, without the payment of taxes, the property would be released from all taxation for the years for which the taxes were paid, solely through the misconduct of Clark. Such a result would violate the well-known maxim, that a party shall not be allowed to take advantage of his own wrong. The doctrine of estoppel applies to Clark in this matter, and his lips are sealed as to any defects in the description in the assessment which he made of his own premises.

The judgment will be affirmed.

All the Justices concurring.