## CITY OF HOUSTON V. RACHEL B. STEWART.

### No. 1428.   Decided May 25, 1905.

**1.—Cities—Street Improvement—Charter—Constitutional Law.**

Section 40b of the amended charter of the city of Houston, authorizing the city, which had abandoned the plan of street improvement by special assessment on owners of abutting property in proportion to frontage to follow that of improvement with funds derived from general taxation, to issue to those who had paid such special assessment refunding certificates for the amounts so paid, bearing coupons receivable for taxes, for the purpose of equalizing their burden with that of other taxpayers, was not unconstitutional. (P. 76.)

**2.—Same—Creation of Debt.**

Such equalization of the burdens upon property was not the creation of a debt by the city within the meaning of Art. 11, secs. 5 and 7, of the Constitution of the State, requiring provision to be made for interest and sinking fund on creating a debt, and was an adjustment of such burden which the Legislature could authorize the city to make. (P. 76.)

**3.—Same—Taxes not Collectible in Money.**

Art. 11, sec. 4, of the Constitution, making city taxes collectible only in current money does not apply to cities of over ten thousand inhabitants. (P. 76.)

**4.—Constitutional Law—Filling Two Offices.**

The appointment of an alderman as member of a board of appraisement for taxes, in accordance with the charter and ordinances of a city did not constitute him an incumbent of two offices in violation of Art. 16, Sec. 40 of the Constitution. His service on such board was as an alderman. (P. 76.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

*T. H. Stone, W. J. Howard* and *E. P. Phelps,* for appellant.—The Legislature is without power to authorize a municipality to levy any tax to pay, or to pay any claim against it not legally contracted for in the manner provided by the charter, and section 40b of the charter of the city of Houston is unconstitutional and void.

Section 40b, of the charter of the city of Houston constitutes an attempt, by the Legislature, to relieve and exempt the property against which improvement certificates had been theretofore issued in payment for pavements in front thereof, according to the front foot rule, where said certificates had been paid, from the payment of its share of the taxes laid, levied and assessed against and collected on property generally within the corporate limits of the city of Houston, by it, and to render unequal and not uniform the taxes laid, levied, assessed and collected in and by said city. Constitution of Texas, art. 8, sec. 1.

By said section 40b, of said charter of the city of Houston, it was attempted to authorize the city council of said city to divert the funds resulting from the levy, assessment and collection of taxes, for public purposes, to the payment of invalid and illegal demands against the said city. Citizens' Bank v. City of Terrell, 78 Texas, 450.

An ordinance which attempts to create a debt against a municipal corporation without, at the time, making provision for the creation of a sinking fund for the payment of such debt is unconstitutional and void, and can not be ratified by such municipality, or its officers, nor can it be in any manner estopped from denying the validity of such debt.

The taxes due a city can be legally paid only in current money of the United States, and the attempt upon the part of appellee to pay the taxes upon her said property by the warrant issued to John S. Stewart and the street pavement refunding certificates and coupons mentioned in said cross-assignment was in effect no payment at all. Constitution of Texas, art. 11, sec. 4.

The issuance of the paving refunding certificates by the city of Houston was an attempt to create a debt against said city, and no provision having been made at the same time to assess and collect annually a sufficient sum to create a sinking fund of as much as two percent to pay such debt, the said city was without power to issue said certificates, and said attempt to do so was ultra vires and void. Constitution of Texas, art. 11, secs. 5 and 7; Howard v. Smith, 91 Texas, 15; McNeal v. City of Waco, 89 Texas, 83; City of Terrell v. Dessaint, 71 Texas, 770.

If it be conceded that the inhibition contained in article XVI, section 40, Constitution of Texas, against the same person holding more than one office, applies to offices other than constitutional offices, so to speak, offices not created by the constitution, and has application to officers of a municipal corporation, still we submit that an alderman, who is also a member of the board of appraisement, does not hold two offices, within the contemplation of the constitution; that the latter position is not an office separate and distinct from the office of alderman, but is more in the nature of membership on a committee of the council, to which is assigned certain duties concerning taxation, the same as is to the police committee assigned certain duties concerning police regulations, and to the street and bridge committee certain duties referring to streets and bridges.

*Stewart, Stewart & Lockett* and *Brashear & Dannenbaum,* for appellant.—The charter provisions of the city of Houston formerly in force, under which the city assessed the amounts to pay for paving of the streets in front of the property of appellee was in the nature of a tax for the benefit of the appellant, and while the courts of this state had for a time upheld such charter provisions, they were contrary to the constitution of our state and were void, and the payment for said pavement by appellee was under duress and an involuntary payment, and the appellee had the right to recover the amounts paid for such pavement from the city; and, having such right, the Legislature had the power to pass the amendment provided for in section 40b of the charter of the city of Houston. Marshall v. Sneidker, 25 Texas, 472; Baker v. Panola Co., 30 Texas, 93; Galveston v. Sydnor, 39 Texas, 241; Caldwell Co. v. Harbert, 68 Texas, 321; Lovenberg v. City of Galveston, 17 Texas Civ. App., 164; New Orleans v. Clark, 95 U. S., 644; Tippecanoe Co. v. Lucas, 93 U. S. 108; Sinton v. Ashbury, 41 Cal., 525; Blanding v. Burr, 13 Cal., 343; Barber Asphalt Co. v. Harrisburg, 64 Fed. Rep., 108; Barber Asphalt Co. v. Denver, 72 Fed. Rep., 336; Newport v. Ringo, 10 S. W., 2; Essex Public Road Board v. Skinkle, 140 U. S., 343; Hartford v. Hartford Bridge Co., 10 Howard, 513; People v. Lynch, 21 Am. Rep., 677; Dunn v. Mellon, 30 Am. Stat. Rep., 706.

The Legislature had the authority, under the constitution of this state, to authorize the city of Houston to receive taxes due it in other manner than by payment in current money of the United States. City Charter, sec. 40b, Special Laws, 26th Leg., p. 192; sec. 5, art. 11, State Constitution; City of Dallas v. Western Electric Co., 83 Texas, 243; City of Dallas v. Young, 28 S. W., 1036; Texas, etc., Ass'n v. Piere Heirs, 1 Texas Civ. App., 457; Storrie v. Woessner, 47 S. W., 838; State v. Hanscom, 37 S. W., 455; Smith v. Grayson Co., 18 Texas Civ. App., 156; Ostrum v. City of San Antonio, 71 S. W., 304.

That the amount paid for paving the street in front of the property of appellee by appellee, as between appellant and appellee, is not a "debt" within the meaning of the constitution of this state, the creation of which is prohibited by the constitution when provision is not made at the time of creating the same for levying and collecting a suffi-

cient tax to pay the interest thereon, and provide for a sinking fund of at least two percent. McNeal v. City of Waco, 89 Texas, 83; Rodman v. Munson, 13 Barb. (N. Y.), 77; Newell v. People, 7 N. Y., 9; Appeal Tax Co. v. Rice, 50 Md., 316; Milliken v. Sloat, 1 Nev., 590; Finch v. Armstrong, 9 S. Dak., 255.

The constitutional provision that no debt shall be created unless a tax be levied to provide for interest and sinking fund of two percent has no application to the obligation of a city to refund money which it has illegally extracted from an individual, and a proceeding which provides a means for refunding such amount is not the creation of a debt in the sense of the constitution, and the city has the right to return what it has illegally taken, without reference to charter provisions. Barber Asphalt Co. v. Harrisburg, 64 Fed. Rep., 108; Barber Asphalt Co. v. Denver, 72 Fed. Rep., 336.

The city of Houston, within the scope of its general powers, having contracted for the improvements, and had received the benefits of the labor and material of such improvements, which it still retains and enjoys, and having undertaken to pay for them in certificates or warrants, which were worthless and valueless as either a lien on the property of appellee or as a personal obligation against her, but which appellant compelled appellee under compulsion to pay, the appellant became liable to appellee, not as in debt on an express or implied contract to pay money, but in damages for its tortious acts in forcing appellee to pay the worthless certificates issued by it, which damages are measured by the amount paid for street improvements, which said amounts have been determined by the city to be the amount named in the refunding certificates. The amount to be refunded appellee under the authority of section 40b of the charter and the ordinance thereunder authorizing the issuance of the refunding certificates to property owners to refund them for the amounts paid for the paving of streets in front of their property according to the "front foot rule" being paid under duress, the appellant having no authority to compel the collection of such payment, is a tort, and appellant can not plead constitutional limitation against action on obligation arising out of a tort. City of Galveston v. Posnainsky, 62 Texas, 118; City of Galveston v. Barbour, 62 Texas, 173; City of Houston v. Isaacks, 68 Texas, 118; Bloomington v. Perdue, 99 Ill., 329; Bartle v. Des Moines, 38 Iowa, 414; Thomas v. Burlington, 69 Iowa, 140; Dallas v. Miller, 7 Texas Civ. App., 503.

The Legislature has power to authorize or require a city to discharge an obligation, whether legal or moral only, and the action of the Legislature in so doing is not in conflict with the provision of the constitution which forbids the creation of a debt without providing for interest and a sinking fund of at least two percent. Caldwell Co. v. Harbert, 68 Texas, 321; New Orleans v. Clark, 95 U. S. 644; Tippecanoe Co. v. Lucas, 93 U. S., 108; Essex Pub. Road Board v. Skinkle, 140 U. S., 343; Hartford v. Hartford Bridge Co., 10 Howard, 513; Mulligan v. Corbins, 7 Wallace, 487; Maryland v. Baltimore & O. R. R. Co., 3 Howard, 534; Cooley's Const. Lim., p. 281 and 283; Guilford v. Supervisors, 13 N. Y., 143; Sinton v. Ashbury, 41 Cal., 525;

People v. Lynch, 21 Am. Rep., 677; 1 Dillon on Municipal Corporations, sec. 61.

There is nothing in the constitution of the State of Texas prohibiting the Legislature from creating a debt "unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two percent thereon," and the declaration in the charter of the city of Houston that the "city council shall have power to provide by ordinance for the gradual refunding of money heretofore paid by persons for pavements in front of their property according to the front foot rule heretofore in existence," is tantamount to a refunding by the Legislature, and the objection can not be urged that no provision was made for interest and sinking fund.     Section 40b, City Charter, Special Laws, 26th Leg., p. 192; Amer. & Eng. Ency. of Law (1st ed.), vol. 19, p. 463; Tilley v. Savannah R. R. Co., 5 Fed. Rep., 641; Amer. & Eng. Ency. of Law (2d ed.), vol. 6, p. 1029.

Where an ordinance provides that illegal assessments shall be refunded by allowing the taxpayer a credit of one-twentieth on his taxes each year, this is not in conflict with the provision of the constitution that "no debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two percent thereon," and where there is authority in the charter for a levy it is self-executing to the amount necessary to raise the sinking fund for such certificates.     Art. 11, sec. 5, State Constitution; sec. 10b, City Charter, Special Law, 26th Leg., p. 192; Mitchell Co. v. Bank of Paducah, 91 Texas, 361; Wright v. City of San Antonio, 50 S. W., 406.

An ordinance which allows a tax collector to receive refunding certificates in satisfaction of, or on account of taxes does not create a debt, but simply provides a means of paying what the city considers that it owes.

The constitutional provision (art. XI., sec. 5) that "no debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two percent thereon" has no application to a debt imposed by the Legislature upon the city, and the Legislature having full control over a city and its finances, an act passed by it giving the municipality authority to provide for payment of a claim is mandatory and the power thus conferred is a duty imposed on the municipality.     That such a constitutional provision does not prohibit the Legislature from compelling payment of claim.     Lewis v. Widber, 99 Cal., 412; Grant Co. v. Lake Co., 21 Pac. Rep., 441; Sinton v. Carter, 23 Fed. Rep., 535.     General authority of Legislature to compel city to pay claim, regardless of whether it is legal or moral obligation.     Caldwell Co. v. Harbert, 68 Texas, 321; Cooley Const. Lim., p. 283; Guilford v. Supervisors, etc., 13 N. Y., 143; Sinton v. Ashbury, 41 Cal., 525; Dillon on Munic. Corp. (4th ed.), 61 (sec.); Tippecanoe Co. v. Lucas, 93 U. S., 108; New Orleans v. Clark, 95 U. S., 644. That the act giving authority to pay the claim imposes a duty to pay it. Sutherland Statutory Construction, secs. 460, 461, 462, and many

cases there cited, from which it appears conclusively that the charter provision giving authority to issue the refunding certificates imposes a duty on the city to issue them. Beach Pub. Corp., sec. 869 (citing People v. Bd. of Supervisors, 1 N. Y. Sup., 460. In this case mandamus was awarded, although—previous to the passage of the act—judgment had been rendered against the claim).

No person shall hold or exercise, at the same time, more than one civil office of emolument, except that of justice of the peace, county commissioner, notary public and postmaster, unless otherwise specially provided in the constitution of the State of Texas. St. Const., art. 16, sec. 40; Brumby v. Boyd, 66 S. W., 874; State v. Brinkerhoff, 66 Texas, 45; Territory of Wyoming v. Ritter, 1 Wyo., 330.

The charter and ordinances of the city of Houston provided for the appointment of a board of appraisement, who were invested with a portion of the sovereign functions of the government, which functions were separate and distinct from those of members of the city council; they had to take an oath as members of the board of appraisement, and their duties as fixed under the charter and ordinances were not those of a committee of the council, but as separate and distinct officers. Hendericks v. State, 49 S. W. Rep., 705; Kimbrough v. Barnett, 93 Texas 301; Texas & P. Ry. Co. v. Harrison Co., 54 Texas, 123; Mechem on Public Offices, sec. 1.

The city of Houston, within the scope of its general powers, having contracted for the improvements and having received the benefits of the labor and material of such improvements, which it still retains and enjoys, and having undertaken to pay for them in certificates or warrants which were worthless and valueless as either a lien on the property of appellee or as a personal obligation against her, but which the city compelled appellee under compulsion to pay, the appellant became liable to appellee, not as in debt or an express or implied contract to pay money, but in damages for its tortious acts in forcing appellee to pay the worthless certificates issued by it. Special Laws, 17th Leg., sec. 23, p. 1; Special Laws, 18th Leg., sec. 23, p. 15; Special Laws, 21st Leg., sec. 23, p. 99; Special Laws, 23d Leg., sec. 23 p. 20; Special Laws, 29th Leg., sec. 29, p. 63; Read v. Plattsmouth, 107 U. S., 568, 575; Lovenberg v. City of Galveston, 17 Texas Civ. App., 164; City of Tyler v. Jester, 74 S. W., 359; Parkersburg v. Brown, 106 U. S. 487; Central Trans. Co. v. Pullman Palace Car Co., 139 U. S., 24; Louisiana v. Wood, 102 U. S., 294; City of Lampasas v. Talcott, 94 Fed. Rep., 457; Livingston v. School Dist., 76 N. W. Rep., 301; Lincoln Land Co. v. Village of Grant, 77 N. W. Rep., 349; Ward v. Town of Forest Grove, 25 Pac., 1020; Barber Asphalt Co. v. City of Harrisburg, 64 Fed. Rep., 283; Barber Asphalt Co. v. City of Denver, 72 Fed. Rep., 336; District of Columbia v. Lyon, 161 U. S., 200; City of Conyers v. Kirk, 3 S. E. Rep., 443; Millington v. Texas Pacific Ry. Co., 2 White & W. Civ. Cases, sec. 171.

BROWN, Associate Justice.—Certified questions from the Court of Civil Appeals of the First Supreme Judicial District. The statement and questions are as follows:

"In the above entitled cause pending in this court on appeal from

the District Court of Harris County, we deem it wise to certify for your determination the questions hereinafter stated which are presented by the record.

"The suit was brought to set aside an alleged settlement of the claim of the city against appellee for delinquent taxes, and to recover such taxes and foreclose appellant's lien therefor upon property described in the petition. The taxes claimed to be due were for the years 1881 to 1889 inclusive and the years 1895, 1896, 1897, 1898 and 1901, the aggregate amount claimed being $5,174.75.

"The defendant answered by general and special exceptions and general denial and by various special pleas, one of which was a plea in reconvention for the amount of certain refunding certificates issued by the city of Houston to defendant's testator, Charles Stewart. Another of said special pleas was in substance as follows:

" 'That the taxes for the years 1895, 1897 and 1898, as assessed by the owner, were raised by a board of appraisement, two members of which were aldermen of the city of Houston, and could not lawfully serve on the board of appraisement, same being an office within the meaning of section No. 40, article XVI, State Constitution.'

"In reply to this answer plaintiff attacked the section of the charter of the city of Houston under which the refunding certificates were issued claiming that it was unconstitutional, for reasons which we will state later, and praying that said certificate be cancelled. The trial resulted in a judgment in favor of the plaintiff for taxes due for the years 1895, 1897, 1898 and 1901, amounting to the sum of $2,733.06, and in favor of defendant on her plea in reconvention for the sum of $2,518.09. No judgment was rendered cancelling the refunding certificates as prayed for by plaintiff, nor was defendant allowed to recover on her plea in reconvention for any portion of the amount for which said certificates were issued, her recovery being limited to the amount found to be due upon the claim of John S. Stewart for services rendered the plaintiff, which claim had been assigned to her.

"The record discloses that under the charter of the city of Houston in force prior to 1899 the city paved the streets upon which a portion of the property of defendant abutted, assessed such property under the front foot rule for its proportion of the cost of the improvement and collected said assessment from defendant's testator, the then owner of the property.

"In 1899 the Legislature amended the charter of the city by adding thereto section 40b, which is as follows:

" 'The city council shall have power to provide by ordinance for the gradual refunding of money heretofore paid by persons for pavements in front of their property according to the front foot rule heretofore in existence, and to provide how and to whom such money shall be refunded, and to provide how same shall be paid and for that purpose shall have power to authorize the city council to reduce the rate of taxation on or to reduce the valuation of the property in front of which such pavements were made.' (Special Law, 26th Legislature, p. 192.)

"Acting under this amendment the city council in October, 1900, passed an ordinance which provides in substance for the issuance of certificates to the owners of property reciting the amounts paid by

them for improvements of the streets in front of their property under the front foot assessment rule and certifying that such property was entitled to a credit for the amount of said payments against the city taxes which might thereafter be levied upon it, but providing that only one-twentieth of such amount could be credited against the taxes levied for any one year. Under this ordinance certificates were issued to the defendant in December, 1900, for $2,433.31, that being the amount paid by her testator, Charles Stewart, for the pavement of the streets in front of the property upon which a portion of the taxes claimed in this suit are alleged to be due for the year 1901. These certificates refer to the charter amendment and the ordinance under which they were issued and each has nineteen coupons attached thereto, each of said coupons being for one-twentieth the amount of the certificate. These coupons are dated from 1901 to 1919 consecutively and could only be received in payment of taxes on the property described in the certificate for the respective years for which they were issued.

"Appellant assails the validity of these certificates on the ground that the amendment to the charter under which the ordinance was passed authorizing their issuance is unconstitutional for the following reasons:

"(a) It was an attempt on the part of said legislature to authorize the payment by the city of Houston of claims against it not created by an agreement or contract duly made and entered into by it, in the manner and form provided for by its charter and ordinances.

"(b) It was an attempt on the part of said legislature to authorize the payment of a claim created against it under an agreement and contract made without authority of law.

"(c) It was an attempt on the part of the said legislature to relieve and exempt the property against which improvement certificates had been theretofore issued in payment for pavements in front thereof, according to the front foot rule, where said certificates had been paid, from the payment of its share of the taxes laid, levied and assessed against and collected on property generally within the corporate limits of the said city of Houston by it; and to render unequal and not uniform the taxes laid, levied, assessed and collected in and by said city.

"(d) It was an attempt on the part of said legislature to authorize the city of Houston to apply taxes laid, levied and assessed and collected by it, to other than public purposes; said sums of money, for which same were authorized to be issued, not being valid, legal and subsisting obligations of the said city of Houston.

"(e) It was an attempt by said legislature to authorize and empower the city of Houston to accept and collect sums of money laid, levied and assessed as taxes by it, in other manner than by the payment thereof in current money of the United States.

"(f) It was an attempt by said legislature to authorize and empower the said city of Houston to create and incur a debt and obligation without making provision at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and provide for a sinking fund of at least two percent.'

"The charter of the city of Houston, passed in 1895, contains the following provision:

" 'A board of appraisement shall be appointed by the mayor and confirmed by the council, and shall continue to act as such board until their term of office as aldermen has expired, and all matters pertaining to taxation shall be referred to said board, from whose final decision there shall be no appeal. The board appointed by the present administration at its commencement in 1894 is hereby constituted the board of appraisement and shall continue to serve as such until their present term as aldermen shall expire.' (Special Laws, 24th Leg., p. 10.)

"This section of the charter was amended in 1897 so as to read as follows:

" 'A board of appraisement, composed of two aldermen and one citizen, shall be annually nominated by the mayor, and confirmed by the council, and it shall be their duty, as soon as possible after the completion of any one of the assessment rolls by the assessor and collector of taxes, to meet and carefully examine said roll, and properly and equitably adjust the taxable values thereon, thus continuing until they have examined and adjusted and equalized the taxes assessed on all the rolls under regulations to be fixed by the city council, when they, together with the assessor and collector of taxes, shall make due report of their action to the city council. The members of said board shall receive such compensation for their services while engaged upon said rolls, as the council may determine, not to exceed five dollars per day, and all matters pertaining to taxation shall be referred to such board, from whose final decision there shall be no appeal; provided, further, that the board of appraisement shall not remain in session over sixty days.'

"The ordinances of the city under which the city board of appraisers for the years 1895, 1897 and 1898 were appointed required that the board should be composed of two aldermen and one citizen. The compensation of the members of these boards and of the city aldermen allowed by ordinance of the city was $5.00 per day for each day of service. The members of the board of appraisers were required to take an oath of office different from that required of the aldermen. These boards were appointed annually.

"The valuation of the property of appellee upon which taxes were recovered in this suit for the years before stated as fixed by the owner and the city assessor was increased by the city board of appraisers.

"Appellee urges that the amount of the taxes claimed by appellant for said years is illegal because the provisions of the city charter and the ordinances of the city creating said board were unconstitutional and void and that they required the majority of the board to hold more than one civil office of emolument at the same time.

"Upon the foregoing statement we respectfully certify for your decision the following questions:

"First. Is section 40b of the charter of the city of Houston authorizing the refunding of the paving assessments paid under the front foot rule unconstitutional?

"Second. Is the charter provision and ordinances providing for the appointment of a board of appraisers unconstitutional?

"Third. If the second question be answered in the affirmative, should

appellant be denied recovery for all of the taxes sued for upon the property upon which the valuation was raised by the board, or only for taxes due upon the increase in the valuation made by the board?"

The section of the charter referred to in the first question is not unconstitutional. The sum authorized to be refunded was not a debt within the meaning of article XI, sections 5 and 7 of the constitution of the state. It did not grow out of any contract between the parties but originated from the collection of an assessment made by the city upon the property of the persons to whom it was to be returned, and, for sound reasons the city was authorized by the state to return that sum. (McNeal v. Waco, 89 Texas, 83.) The assessment made for street improvements was based upon a policy which was thereafter abandoned and the plan of improving the streets of the city by taxation adopted. It would be great injustice to property holders, who had already paid for the improvements of streets in front of their property, to subject them to taxation for a general system of such improvements from which they could receive no benefit without restoring to them that which they had already paid to the city for that purpose. It was within the power of the legislature to authorize the city to make an equitable adjustment of these matters so as to equalize the burden upon the property of its citizens.

It is objected that the section of the charter in question is unconstitutional, because it authorizes the city to receive in payment of taxes certificates of indebtedness, whereas the constitution forbids that taxes should be paid in anything but money. Article XI, section 4, which contains this language, "shall be collectible only in current money," applies only to cities of ten thousand population or less. There is no such provision in section 5 of that article which regulates the subject of taxation in cities of more than ten thousand population. The city of Houston contains a population of more than ten thousand, therefore, the prohibitory clause relied upon does not apply to that city.

The charter provisions and ordinances, providing for the appointment of a board of appraisers is not unconstitutional. The section of the charter referred to in the second question did not create a new office, but conferred upon the aldermen, when selected, a power which might have been given to the entire council. (Vol. 2, Current Law, 810.) When appointed on the board of equalization they continued to be aldermen and performed their work of equalization as aldermen of the city; there was no violation of this clause of article XVI, section 40, of the constitution: "No person shall hold or exercise at the same time more than one civil office of emolument." There is no constitutional prohibition against conferring power upon any officer, except that the authority vested in the officers of one department of the government shall not be conferred upon those of another department; the facts do not bring this case within any prohibition of the constitution.

The first and second questions are answered in the negative, and the third does not require an answer.